UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re: NEW ENERGY SYSTEMS
SECURITIES LITIGATION                                    12-cv-01041 (LAK)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

        Appearances:

> Thomas J. McKenna
> Gregory M. Egleston
> GAINEY MCKENNA & EGLESTON
> *Attorneys for Lead Plaintiff*
>
> Philip C. Kim
> THE ROSEN LAW FIRM P.A.
> *Attorneys for Plaintiffs*
>
> Caryn G. Schechtman
> Joshua S. Sohn
> David V. Sack
> Robert D. Weber
> DLA PIPER LLP (US)
> *Attorneys for Defendants*

LEWIS A. KAPLAN, *District Judge.*

        This putative class action concerns purchases of New Energy Systems Group ("New Energy" or the "Company") stock between April 15, 2010, and November 14, 2011.[1] Plaintiffs[2]

---

[1] *See* Consolidated Class Action Complaint ("CAC" or "Complaint") [DI 21] ¶ 1. This Court has previously dismissed a parallel derivative action. *See* Memorandum Opinion, *Campbell v. Yu*, No. 12 Civ. 3169 (June 10, 2014) [DI 52].

[2] The term "Plaintiffs" refers to lead plaintiffs Joseph M. Jason, Richard Watson, Charles W. Clark, Gloria J. Scott, and Spencer Thompson (collectively, the "Jason Investor Group")

assert claims under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act")[3] based on alleged misstatements regarding revenue and earnings in the Company's 2009 form 10-K.[4] Plaintiffs bring an additional claim for violation of Section 20(a) of the Exchange Act against four individual defendants who held various officer roles with the Company.[5]

The matter is before the Court on a motion to dismiss[6] brought by the Company and defendants Weihe Yu and Junfeng Chen.[7]

*Facts*

Defendant New Energy is a Nevada corporation with its headquarters and main operating divisions in Shenzhen, China.[8] As of 2008, most of New Energy's operations were

---

and named plaintiff Pascal Van Hove GCV.

[3]   *See* 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5.

[4]   *See* CAC ¶¶ 40-43. Plaintiffs allege that the same misrepresentations are repeated in the Company's 2010 10-K. *See* CAC ¶ 62.

[5]   *See* 15 U.S.C. § 78t(a). Individual defendants include Fushun Li (CEO from the beginning of the class period through May 14, 2010); Nian Chen (CEO from May 14, 2010 through August 19, 2011); Junfeng Chen (CFO during all relevant times since August 2009); and Weihe Yu (Chairman of the Company's Board of Directors and CEO from August 19, 2011 onwards). *See* CAC ¶¶ 32-35.

[6]   DI 33.

[7]   Defendants Fushun Li and Nian Chen are former officers who are not parties to the motion because they have not been served. *See* Memorandum of Law in Support of Defendants' Motion to Dismiss [DI 34] at 4.

[8]   CAC ¶¶ 22, 28-29.

3

conducted by a subsidiary, Shenzhen E'Jenie Technology Development Co., Ltd. ("E'Jenie").[9] The Company manufactures and distributes lithium battery shells and related products, primarily in China.[10]

The Complaint focuses on discrepancies in the Company's financial reports filed with the SEC and the Chinese State Administration for Industry and Commerce ("SAIC"). In particular, Plaintiffs allege large differences in 2008 and 2009 revenue and net income as reported to the two entities. The Complaint states that revenue and net income in the 2008 SEC filings were 456 percent and 9,863 percent of what was reported in the Chinese filings for E'Jenie ($19.7 million and $4.45 versus $3.5 million and $44,700),[11] and that revenue and net income in the 2009 SEC filings were 1,185 percent and 9,662 percent of what was reported in Chinese filings ($26.38 million and $5.84 million versus $2 million and $59,800).[12] The gravamen of the Complaint is that the Company kept "two sets of books," and that the Chinese filings reflected the true state of the Company's finances while the SEC filings were false and misleading.[13]

Plaintiffs attempt to bolster these allegations by detailing the Chinese filings of E'Jenie's largest customer and New Energy's two largest suppliers. According to the Chinese filings, E'Jenie's largest customer had no revenue during much of the period when that customer was reported

---

9
    *Id.* ¶¶ 23, 29, 42.

10
    *Id*. ¶ 29.

11
    *Id.* ¶¶ 3-4, 43.

12
    *Id.*

13
    *Id.* ¶ 4.

4

in New Energy's 2009 10-K to be responsible for between 55.9 perfect and 74.8 percent of the Company's revenue.[14] New Energy's largest supplier, accounting for 27.7 percent of purchases reported in the 2009 10-K for 2009, had no SAIC filings during the relevant period and interviews allegedly confirm that the company ceased operations in 2008.[15] New Energy's reported second-largest supplier, accounting for 26.6 percent of purchases for 2009 in the Company's 2009 10-K and 26.9 percent of purchases for 2008 in the Company's 2008 10-K, reported only $11,000 of revenue in 2009 and $84,044 in revenue in 2008 in its Chinese filings.[16] By way of context, New Energy's cost of revenue was reported to be $18.3 million in 2009.[17]

New Energy amended its Chinese filings to comport with its SEC filings in December 2010 and posted the amended filings to its website on March 31, 2011.[18] On November 15, 2011, New Energy issued a press release announcing a 42 percent decline in year-over-year revenues for the third quarter.[19] Plaintiffs allege that this announcement caused a 48.6 percent drop in the Company's stock.[20] Plaintiffs assert further that "New Energy's revenue did not fall 42 [percent]," and that, instead, "New Energy never had revenue or income in the large amounts previously reported" and

---

[14] *Id.* ¶¶ 84-90.

[15] *Id.* ¶¶ 91-93.

[16] *Id.* ¶¶ 94-96.

[17] *Id*. ¶¶ 91, 94.

[18] *Id.* ¶¶ 9, 74-81.

[19] *Id*. ¶¶ 97-99.

[20] *Id.* ¶ 100.

defendants "merely ratcheted down New Energy's revenue in an effort to conceal their fraud."[21]

These allegations regarding loss causation are fatally flawed.

*Discussion*

To survive a Rule 12(b)(6) motion, a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face."[22]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[23]  The Court accepts as true all well-pleaded factual allegations and "draws all inferences in the plaintiff's favor."[24]

"A private plaintiff who claims securities fraud must prove that the defendant's fraud caused an economic loss."[25]  Generally, a plaintiff does not adequately plead loss causation by alleging merely that the price of a security on the date of purchase was inflated as a result of the misrepresentation or omission.[26]  Such an allegation "explains why particular investment was made,

---

[21] *Id.* ¶ 101.  Plaintiffs allege also that New Energy's subsequent announcement of the sale of certain of its subsidiaries occurred in furtherance of the purported cover-up.  *See id.* ¶ 102.

[22] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[23] *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

[24] *See Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 107 (2d Cir. 2012).

[25] *Dura Pharm., Inc. v. Broudo,* 544 U.S. 336, 338 (2005).

[26] The Court does not address whether a plaintiff must plead loss causation under the heightened standard of Rule 9(b) and the Private Securities Litigation Reform Act, *see* 15 U.S.C. § 78u-4(b), or the notice pleading requirements of Rule 8.  The question "has not yet been definitively addressed by the Second Circuit, but the vast majority of courts in this district have required that loss causation only meet the notice requirements of Rule 8."

but does not speak to the relationship between the fraud and the loss of the investment."[27]  Instead, to establish loss causation, "a plaintiff must allege . . . that the *subject* of the fraudulent statement or omission was the cause of the actual loss suffered."[28]

The Complaint does not allege that Plaintiffs suffered losses either when the Company amended its 2008 and 2009 Chinese filings or when it publicized information about those amendments.  Rather, the Complaint ties Plaintiffs' losses to a press release, issued several months later, that described a precipitous drop in the Company's third-quarter 2011 revenues, as well the subsequent announcement of the sale of certain of the Company's subsidiaries.  Plaintiffs have clarified that their theory of damages rests not on corrective disclosures, but rather on the notion of materialization of the concealed risk.  On Plaintiffs' telling, the risk was the "true financial condition of New Energy's operating subsidiaries" and that risk materialized when "New Energy attempted to deflate its overstated revenue and income and prevent detection of the fraud because of the increased scrutiny by the SEC on reverse Chinese merger companies like New Energy."[29]  Defendants argue that this theory is unavailing because "when elements of the alleged 'concealed risk' were exposed to the

---

*Wilamowsky v. Take-Two Interactive Software, Inc.*, 818 F. Supp. 2d 744, 753 n.7 (S.D.N.Y. 2011).  Because the Court determines that the Complaint's allegations regarding loss causation are insufficient under Rule 8, there is no need to opine further. C*f. Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*, 543 F. App'x 72, 74 n.2 (2d Cir. 2013) (declining to address the issue where the appellate court agreed with the district court's dismissal of a complaint on loss causation grounds under the Rule 8 standard).

[27] *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 174 (2d Cir. 2005).

[28] *Id*. at 175 (quoting *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 95 (2d Cir. 2001) (emphasis added by *Lentell*)).

[29] Lead Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss [DI 37] at 18.

market," the Complaint alleges no market reaction whatsoever.[30] Defendants are correct.

The Second Circuit has analogized the requirement of loss causation to that of proximate cause in a tort case. A misstatement or omission "is the 'proximate cause' of an investment loss if the risk that caused the loss was within the zone of risk *concealed* by the misrepresentations and omissions alleged by a disappointed investor."[31] But here, insofar as Plaintiffs allege that the "true financial condition of New Energy" was apparent based on the differences between the Company's SEC and SAIC filings,[32] that risk necessarily was clear to the market in early 2011.[33] In these circumstances, when there are "substantial indicia of the risk" already in the public domain, a plaintiff must allege "(i) facts sufficient to support an inference that it was defendants' fraud – rather than other salient factors – that proximately caused plaintiff's loss; or (ii) facts sufficient to apportion the losses between the disclosed and concealed portions of the risk that ultimately destroyed an investment."[34] As in *Lentell*, plaintiffs here have done neither.

The requirement to plead and prove loss causation exists because "private securities fraud actions are 'available, not to provide investors with broad insurance against market losses, but

---

[30] Reply Memorandum of Law in Support of Defendants' Motion to Dismiss [DI 42] at 9.

[31] *Lentell*, 396 F.3d at 173 (emphasis in original).

[32] *See* CAC ¶ 60 ("[f]raud is the only plausible explanation" for the "huge differences" between SEC and SAIC filings); *id.* ¶ 80 ("New Energy's explanation for the amendments [to the SAIC filings] makes no sense," is "patently false," and does not address the "huge disparities" as between the SEC and SAIC filings).

[33] *Cf. Monroe Cnty. Emps.' Ret. Sys. v. YPF Sociedad Anónima*, 13 Civ. 842 (SAS), 2014 WL 661442, at *11 (S.D.N.Y. Feb. 20, 2014) (noting that "materialization of a known risk, rather than the disclosure of a concealed one," is not a plausible theory of loss causation).

[34] *Lentell*, 396 F.3d at 177.

8

to protect them against those economic losses that misrepresentations actually cause.'"[35] As drafted, the Complaint simply yokes the late 2011 drop in New Energy's stock price to allegations of earlier malfeasance. But loss causation cannot be alleged plausibly in so conclusory a fashion.

*Conclusion*

Accordingly, defendants' motion to dismiss the Complaint is granted.[36]

SO ORDERED.

Dated:   September 30, 2014

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[35] *In re Omnicom Grp. Inc. Sec. Litig.*, 597 F.3d 501, 510 (2d Cir. 2010) (quoting *Dura*, 544 U.S. at 345).

[36] The Court dismisses also Plaintiff's claim under Section 20(a) of the Exchange Act since, in the absence of loss causation, the Complaint fails to allege a primary violation of Section 10(b) of the Exchange Act. *See In re China Valves Tech. Sec. Litig.*, 11 Civ. 0796 (LAK), 2012 WL 4039852, at *8 (S.D.N.Y. Sept. 12, 2012) ("As the [complaint] fails to plead an underlying violation of the Exchange Act, its allegations of control person liability under Section 20(a) fail also.").